UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-81408-CIV-MARRA/MATTHEWMAN

VICTORIA ROHN,

Plaintiff,

vs.

PALM BEACH COUNTY SCHOOL BOARD,

Defendant.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant Palm Beach County School Board's ("Defendant") Motion for Summary Judgment (DE 93) and Plaintiff Victoria Rohn's ("Plaintiff") Motion to Dismiss Defendant's Motion for Summary Judgment (DE 99). The Court has carefully considered the motions and is otherwise fully advised in the premises.

I.  Background

A.T.R. and J.R. are fraternal twins born on April 28, 2006. Both were born prematurely with very low birth weights and the birth resulted in some injury to them. J.R. suffered a series of seizures that caused brain hemorrhages resulting in developmental delays. (Plan of care, 35(1), Ex. B, DE 98-4; Hearing Tr. ("Tr.") 360-63, Ex. C, DE 95-2.) In October of 2006, six months after the twins' birth, Plaintiff applied for subsidized school readiness services for her children through Florida's Agency for Workforce Innovation and its contractor, Family Central. (Enrollment form, 2(6)(b)-2(6)(c), Ex. B, DE 98-3.)

Easter Seals Florida, Inc. Child Development Center ("Easter Seals") in Palm Beach County provided services to the twins from May 2006 through July 16, 2009. (Plan of care, 34-

35(1)-35(11), DE 98-4, DE 98-5). J.R received speech therapy, occupational therapy, and physical therapy and A.T.R. received occupational therapy and speech therapy during those three years. (Plan of care, 34-35(1)-35(11).) In July 2009, the twins were still attending Easter Seals and doing well in the program. (Tr. 59, 63-63, 205-06.) On July 16, 2009, the children were dismissed from Easter Seals. (Tr. 363-65.) According to Plaintiff, the dismissal was due to an altercation involving the twins' father and a relative while on the premises. (Tr. 364-65.) Easter Seals is not affiliated with Defendant and Defendant would not have had access to Easter Seals records. (Tr. 375.)

Plaintiff and her husband were provided with a grievance form from Easter Seals which instructed them on the steps to take in the event a dispute developed between a parent and the program. Easter Seals directed Plaintiff to contact Family Central to assist her in finding an alternative placement. (Grievance procedure, 3(1)(b), Ex. B, DE 98-3.) Defendant has no affiliation with Family Central. (Tr. 392-93.)

Following the dismissal from Easter Seals, Plaintiff contacted Defendant's employee, Dana Wilcox, concerning obtaining pre-kindergarten services for the twins. (Tr. 332, 336-38.) Mr. Wilcox directed Plaintiff to Defendant's Child Find offices in or around July 27, 2009 and also asked North Area Exceptional Student Education ("ESE") Coordinator, Susan Chippendale, to expedite the process due to Plaintiff's distress. (Tr. at 379, 385-86, 527-28.) Plaintiff completed and signed the Child Find documents and returned them to Mr. Wilcox on or about July 29, 2009. (Child find documents, 3(3)(a)-3(4)(c), DE 98-3).

Defendant completed the initial multi-disciplinary evaluations for both twins on September 4, 2009. (Tr. 474; AR5, JR6, Ex. D, DE 98-6.) Plaintiff believed that the consent for

2

the evaluation was a denial of ESE services and it was at this time that Plaintiff and her husband decided to leave Palm Beach County. (Tr. 342-347; JR5, DE 98-6; Pl. Dep. 16-17, Ex. E, DE 95-3.)

Ms. Chippendale testified that Defendant was continuing to gather data with a view towards determining eligibility. A meeting was scheduled to consider all the data and make a determination of eligibility. The meeting could not be scheduled because the twins had been moved to Northern Florida. (Tr. 526-42.) In fact, on or about October 9, 2009, the twins officially relocated to Alachua County and Defendant was no longer the Local Educational Agency ("LEA") for the purpose of providing education for the children. All pertinent documents were forwarded to Alachua County upon request. (Tr. 39, Pl. Dep. 38-39; Oct. 6, 2009 request for evaluation form, Ex. 8, DE 98-3.)

Alaschua County determined initial eligibility for ESE services for A.T.R. in December of 2009 and completed an Individualized Education Plan ("IEP") based on a primary eligibility for Autism Spectrum Disorder. (IEP documents, 9(1)(c), 9(2)(a-h), DE 98-3; Pl. Dep. 73-74, 79.) J.R.'s primary eligibility was determined to be in the category of Other Health Impaired ("OHI"). (IEP documents, 9(6)(a-g), DE 98-3.) Plaintiff and her husband agreed that Alachua County IEP's were appropriate. (Pl. Dep. 116-18.) In determining initial eligibility for both children and in developing the IEP, Alachua County relied upon evaluations completed by Palm Beach County. (IEP documents, 9(1)(c), 9(5)(c), DE 98-3.)

The twins IEP's were reviewed by Alachua County schools in October of 2010. (IEP documents, 11(1)(a-f), 11(2)(a-I), DE 98-3.) Plaintiff contacted Mr. Wilcox in the fall of 2010 regarding registering the twins for school in Palm Beach County. Plaintiff informed him that the

3

twins had IEP's from Alachua County and Mr. Wilcox directed her to contact Amy Baron at Dwight D. Eisenhower Elementary School to register the twins. (Tr. 387-88.) Plaintiff registered the twins in the Palm Beach County School District in November of 2010. (Tr. 388, 424.) Defendant implemented the IEPs from Alachua County. (Tr. 643.)

The twins did not manifest behavior or learning disabilities in their classes. (Observation reports, AR19, JR19, DE 98-6.) On November 19, 2010, Defendant notified the twins' parents that a transition meeting would be scheduled for December 16, 2010. (Parent participation notification, 15(1-2), DE 98-4.) On December 13, 2010, Plaintiff wrote the ESE contact person about the transition notice she received. In that letter, she stated in part, "I am sure this notification is NOT the notice for [J.R.'s] IEP that should be scheduled for the month of February, but just a little notice from you, assuring me that this is only about a change in classrooms and teachers will be fine." (Dec. 13, 2010 letter, 15(3), DE 98-4.) The transition meeting did not occur until January 6, 2011. (Tr. 426-27.) According to their teachers, the twins were typically developing children who did not have behavior or socialization issues. (Tr. 614-25, 637-50.)

The transition teams for the twins included teachers, the ESE contact, a psychologist, occupational therapist and a physical therapist. (Conference/staffing record, 16(3)(a), 16(3)(b), DE 98-4.) During the transition meeting, the IEP team reviewed, discussed and considered J.R.'s current levels of performance along with the existing data. This data included, but was not limited to, evaluations and the Alachua County's IEP provisions. Based on the current level of classroom performance and review of existing data and evaluations, the team concluded J.R. no longer met the requirements for eligibility for ESE pre-kindergarten services in the area of OHI.

4

(Conference/staffing record, 16(3)(a), 16(3)(b).)  A.T.R., while still eligible for ESE pre-K services, did not require the level of services that were provided in the Alachua County IEP in order to receive educational benefits.  A.T.R's services in speech were also reduced by 30 minutes per week. The team decided she would benefit from the two day a week part time model and would benefit from exposure to her same age peers in a typical setting. (Tr. 614-35; Change of placement, 14(1)(a-f).)  In fact, both Plaintiff and the children's teachers felt the classes, which were based on Alachua County's IEPs, were too restrictive and failed to adequately meet the children's needs. (Tr. 511-12, 624-25, 634-35; Pl. Dep. 154.)  While Plaintiff believed this to be a dismissal from the school, Defendant did not dismiss them from the school (Tr. 625-27.)

On January 13, 2011, the twins were withdrawn from Palm Beach County School District and enrolled in a private Voluntary Pre-Kindergarten ("VPK") program.  Plaintiff testified that she withdrew the children because of "threats." (Tr. 430-32, 462, 625-27.)  Plaintiff continued to look for placements offered by Defendant. (Pl. Dep. 155-61, 177.)  Defendant sought to assist Plaintiff in placing J.R. in a typical VPK class within the district, but space was limited at most of the district sites.  (Tr. 508-10.)

Defendant agreed to re-evaluate the children. (Tr. 687-88.)  A.T.R. was re-enrolled on February 14, 2011 at Palm Beach Gardens Elementary school.  She attended that school until she was withdrawn on March 25, 2011. (Tr. 470, 689-90.)  The evaluations were scheduled and completed on February 17, 2011, within one week from the date of meeting with the area ESE coordinator. (Tr. 470, 689-90; AR22, AR24, JR23, JR24, DE 98-6.)  A subsequent IEG meeting was scheduled for March 23, 2011. (Conference/staffing record 33(d)(f-g), DE 98-4; Tr. 689-90, 695.)  During the March 23, 2011 IEP team meeting, J.R. was made eligible under a different

5

category (i.e., "developmental delay"), relying significantly on parent input. (Conference/staffing record 33(d)(f-g), DE 98-4.)  With respect to A.T.R., it was determined that additional testing was indicated and her services were restored to the previous levels dictated by Alachua County. (Conference/staffing record, 33(b); Tr. 706-07.)

Defendant offered Plaintiff a placement for both children at Dwight D. Eisenhower Elementary School but the twins were not enrolled. (Tr. 704-05.)  The twins were enrolled in Allamanda Elementary School in August of 2011, and while Plaintiff testified that she felt "okay" about Allamanda Elementary School, the twins only attended for two days.  (Tr. 458, 608, 707-08.)  Plaintiff did not "trust" Defendant.  (Tr. 588-89.)  Plaintiff subsequently enrolled the children in private school. (Tr. 458-60.)  Plaintiff preferred the private school because she feared that her children would be bullied at a regular school (Pl. Dep. 226.)

This Court's April 23, 2013 Order (DE 76) permitted count one of the Second Amended Complaint ("SAC") (DE 72) to proceed to the extent it challenged the findings of the final administrative order rendered by a state administrative law judge ("ALJ") under the Individual with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA").  Plaintiff claims that the ALJ erred when it rejected her claim that Defendant did not provide her children with a Free and Appropriate Public Education ("FAPE").  In making that claim, Plaintiff argued the following before the ALJ:

1) The services Plaintiff's children received from Easter Seals were being provided on behalf of the Defendant under the IDEA and, consequently, when the children were discharged Defendant had an obligation under the IDEA to continue the services.

2) Defendant did not act quickly enough to provide the services in 2009, and should have continued evaluations even though the twins left Palm Beach County School District, enrolled in Alachua County schools and received services in them.

      3)        The January 2011 decisions to reduce services to A.T.R. and that J.R. no longer needed services denied FAPE to both children.

The ALJ rendered his decision on October 4, 2011, finding in favor of Defendant. (Hearing decision, Ex. B, DE 1-2.) Specifically, the ALJ held that (1) the evidence did not establish that the Easter Seals program was a Palm Beach County School District program or that Defendant was aware of the twins, their educational needs or that it had been asked to provide them any educational services; (2) once the twins were registered in the Palm Beach County School District, Defendant acted timely to evaluate them and (3) the January 2011 decision to reduce services did not deny them a FAPE.

Defendant now moves for summary judgment, seeking a ruling that the ALJ's decision is clearly supported by the law and the factual evidence in the administrative record and therefore it is entitled to summary judgment as a matter of law.

II. Standard of Review[1]

The IDEA authorizes an "aggrieved" party to bring an action in federal court challenging the findings and decision of the ALJ, with the burden of proof falling on the party challenging the agency decision. 20 U.S.C. § 1415(i)(2)(A); Barnett v. Fairfax County School Board, 927 F.2d 146, 152 (4th Cir.1991). The district court's decision must be based on a preponderance of the evidence, giving "due weight" to the results of the administrative findings. Loren F., 349 F.3d at 1314; M.M. v. School Bd. of Miami–Dade County, 437 F.3d 1085, 1097 (11th Cir. 2006) (citing

---

[1] The usual summary judgment principles "do not apply in an IDEA case." Loren F. Ex rel. Fisher v. Atlanta Independent School System, 349 F.3d 1309, 1313 (11th Cir.2003). "[T]he district court's decision is perhaps better described as judgment on the record." Id. (internal quotation marks omitted).

Board of Educ v. Rowley, 458 U.S. 176, 206-08 (1982))  While the court is required to consider all administrative findings of fact, it has discretion to determine the extent of the deference it will give to the administrative findings.  Weiss by Weiss v. School Bd. of Hillsborough County, 141 F.3d 990 (11th Cir.1998) (citing Doe v. Ala. State Dept. of Education, 915 F.2d 651, 657 n.3 (11th Cir.1990)). Further, administrative factual findings "are considered to be prima facie correct, and if a reviewing court fails to adhere to them, it is obliged to explain why." MM, 303 F.3d at 531.

### III.  Statutory Framework

The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to a FAPE that "emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  Ortega v Bibb County School District, 397 F.3d 1321, 1324 (11th Cir. 2005) (citing 20 U. S. C. §1400(d)(1)(A));[2] J. W. ex rel. J. E. W. v. Fresno Unified School District, 626 F.3d 431, 432 (9th Cir. 2010).

Pursuant to the IDEA and corresponding Florida laws, in order to achieve an "appropriate" education, the school district and parents work together to develop an individualized education program for each child with a disability.  Doe v. Ala. State Dept. Of

---

[2]  The IDEA further defines a FAPE as:

special education and related services that - (A) have been provided at public expense, under public supervision and direction and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate . . . education in the state involved; and (D) are provided in conformity with the individualized education program required under [20 U.S.C. §1414(d)].

20 U.S.C. §1401(9).

Education, 915 F.2d 651, 661 (11th Cir. 1990); Weber v Cranston School Committee, 212 F.3d 41, 51 (1st Cir. 2000); 20 U. S.C. § 1414(d) (outlining parental involvement in the IEP process). The IEP is a written statement setting out the student's "individually tailored goals and the means of achieving them," and is a "central component" of a disabled student's special education under the IDEA.  District of Columbia v. Doe, 611 F.3d 888, 892 n.5 (D.C. Cir. 2010) (citing 20 U.S.C. §1414(d)).

Once an IEP is developed, the school must determine whether it will directly provide the special education needs of the child.  M.M., 437 F.3d at 1096 (11th Cir. 2006) (citing Loren F., 349 F.3d at 1312).  If the school elects not to provide the programs outlined in the IEP, it refers the child to a private school or program at no cost to the parent.  Id., (citing 20 U.S.C. §1412(a)(10)(B)(i); 34 C. F. R. §300.401[3]).

If, instead, the school elects to provide the services outlined in the IEP, the parents have three options:  First, the parents may enroll their child in public school and receive the services outlined in the IEP at no cost.  Id.  Second, the parents can acknowledge that the IEP is sufficiently adequate to provide a FAPE, but elect to voluntarily enroll their child in a private school or program at their own expense.  Id. (citing 20 U.S.C. § 1412(a)(10)(C)(i)).  Third, the parents can notify the school that they are rejecting the IEP and then challenge the substance of the IEP via a due process hearing.  Id. (citing 20 U.S.C. §§1412(a)(6)(A) and 1415(a)-(o)).  If the parents then place the child in a private school pending a determination of their claim, and the reviewing hearing officer ultimately finds the substance of the IEP to be lacking, it may require

---

[3] This regulation is no longer in effect.  However, 34 C.F.R. § 146 provides that there is no cost to the parent if a child with a disability is placed in a private school for special education services.  34 C.F.R.  § 146.

the school to reimburse the parents for the cost of the private enrollment. 20 U.S.C. § 1412(a)(10)(C)(ii); see Diaz-Fonseca v Puerto Rico, 451 F.3d 13, 31 (1st Cir. 2006); M.S. ex rel. Simchick v. Fairfax County School Board, 553 F.3d 315, 325 (4th Cir. 2009).

The burden of persuasion at the resulting hearing lies with the party seeking relief, whether that is the disabled child or the school district. Schaffer ex rel. Schaffer v Weast, 546 U.S. 49, 62 (2005). Once the IDEA's administrative due process hearing procedures are exhausted, either side may appeal from the hearing officer's final decision to either a federal or state court of competent jurisdiction. 20 U.S.C. § 1415(i)(2)(A).

IV. Discussion

The record supports the ALJ's finding that the twins' discharge from Easter Seals was not a denial of a FAPE by Defendant. The evidence before the ALJ showed that Easter Seals is not a public school operated by Defendant nor is Easter Seals affiliated with Defendant. In fact, the evidence was to the contrary. (Tr. 375.) Nor was there any evidence demonstrating that during the time the twins were enrolled at Easter Seals, they received any services from Defendant. It was not until the dismissal from Easter Seals that Plaintiff contacted Defendant's employee, Mr. Wilcox, concerning pre-kindergarten services for the twins. (Tr. 332, 336-38.) Based on this evidence, there was no error in the ALJ's finding that Defendant could not have denied the twins a FAPE based on Easter Seal's dismissing them from the program.

Next, once the twins were registered in the Palm Beach County School District, Defendant acted timely to evaluate them. Indeed, the evidence showed that Plaintiff completed the necessary paperwork on or about July 29, 2009 and Defendant completed its evaluation process on September 4, 2009. (Child find documents, 3(3)(a)-3(4)(c); Tr. 474; Multi-

disciplinary pre-kindergarten evaluation AR5, JR6.)  Because the evidence demonstrated that Defendant timely completed this evaluation within 60 days, the ALJ was correct to find that Defendant did not deny the twins a FAPE on this basis. See 20 U.S.C. 1414(a)(1)(C); 6 FL ADC 6A-6.0331(3)(d) (agency has 60 days to complete the evaluation of a child's eligibility for IDEA services under both federal and state law).  Finally, the undisputed evidence showed that, on or around October 9, 2009, Plaintiff and her children moved to Alachua County.  (Tr. 39, 534; Pl. Dep. 38; Oct. 6, 2009 request for evaluation form, Ex. 8(2)(a).)  Once the twins were no longer in the geographical boundaries of Palm Beach County School District, Defendant was not obligated to provide services.  See 20 U.S.C. § 1401(19)(A) (definition of local education agency under IDEA); 20 U.S.C. 1414(a)(1)(A) (local education agency conducts evaluation of child with disability).

      The Court also upholds the ALJ's ruling that the decisions made in January 2011 to reduce services to A.T.R. and to deny services to J.R. were proper.  These decisions were based upon a reasonable evaluation of the information presented to the participants of the January 6, 2011 transition meeting.  The transition meeting included Plaintiff, the twins' teachers, the ESE contact, a psychologist, occupational therapist and a physical therapist.  (Conference/staffing record, 16(3)(a), 16(3)(b).)  During the meeting, the entire team discussed and considered each child's current levels of performance along with the available data, including but not limited to evaluations and the Alachua IEP provisions. Both Plaintiff and the children's teachers agreed the classes were too restrictive and failed to meet adequately the children's needs. (Tr. 511-12, 624-25, 634-35; Pl. Dep. 154.)  While it is true that the team concluded J.R. no longer met the requirements for eligibility for ESE pre-kindergarten services and A.T.R. did not require the

11

current level of services, there is no record evidence to demonstrate that these conclusions were incorrect or inappropriate. (Conference/staffing record, 16(3)(a), 16(3)(b); Tr. 614-35; Change of placement, 14(1)(a-f).) See Chase v. Mesa County Valley School Dist. No. 51, No. 07–cv–00205–REB–BNB, 2009 WL 3013752, at * 8 (D. Colo. Sept. 17, 2009) (the defendant properly determined that the student was no longer entitled to benefits under the IDEA after a cognitive and educational achievement evaluation and analyzing school performance). Nor is there any evidence, as indicated by Plaintiff, that the transition team predetermined the reduction in services prior to the meeting. Equally meritless is any suggestion that the twins were dismissed from Dwight D. Eisenhower Elementary School. Rather, the evidence shows that Plaintiff withdrew the twins from the school. (Tr. 625-27.)

To be sure, Defendant eventually re-evaluated the twins and determined that A.T.R. should have her services restored and that J.R. should be classified with the disability of "developmental delay" as opposed to "other health impaired." That fact, in and of itself, does not mean the prior decision to reduce services to A.T.R. and discontinue services to J.R. was unreasonable. See Fuhrmann on Behalf of Fuhrmann v. East Hanover Bd. of Educ., 993 F.2d 1031 (3d Cir. 1993) ("the measure and adequacy of an IEP can only be determined as of the time it is offered to the student, and not at some later date.").

Eventually, Plaintiff enrolled her children at Allamanda Elementary School. But they only attended that school for two days before Plaintiff withdrew them because she did not "trust" Defendant. She then enrolled them in private school. These facts do not support reimbursement of the private school tuition. While an award of reimbursement is allowed when a private school placement is appropriate and the education at the public school has been inadequate, there is no

basis to find Plaintiff has met this requirement. Draper v. Atlanta Indep. School System, 518 F.3d 1275, 1285 (11th Cir. 2008). In fact, the evidence shows that, after the re-evaluation and restoration of services, Plaintiff felt "okay" about the placement at Allamanda Elementary School. (Tr. 608.) She withdrew the twins simply because she no longer "trust[ed]" Defendant. Equally significant is Plaintiff's failure to provide the required 10-day notice to Defendant that she was going to remove the twins from public school. See 34 C.F.R. 300.148(d)(1)(i-ii); F.A.C. 6a-6.03311(7)(d). In short, there is no evidence in the record that private placement was necessary. Therefore, Plaintiff is not entitled to reimbursement based on her unilateral decision to place the twins in a private school.[4] See School Comm. of Town of Burlington v. Dep't of Educ., 471 U.S. 359, 373-74 (1985) ("parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk.")

In sum, the Court finds that the ALJ's decision in the administrative hearing was supported by competent record evidence.

---

[4] With respect to Plaintiff's complaint that Defendant is responsible for her children not receiving a McKay Scholarship, the Court simply notes that Defendant has no authority to award this scholarship. Although a school district has certain obligations to fulfill in order for the scholarship to be awarded, the scholarship is operated by the Florida State Department of Education and is not related to any claim under the IDEA. See Florida Statute § 1002.39, F.A.C. 6A-6.0970(8). Therefore, there was nothing improper about the ALJ not awarding Plaintiff relief on this basis. Lastly, to the extent Plaintiff raises any new claims that were not raised before the ALJ, those arguments/claims are not before the Court and will not be addressed. (DE 76.)

V. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1)   Defendant's Motion for Summary Judgment (DE 93) is **GRANTED**.

2)   Plaintiff's Motion to Dismiss Defendant's Motion for Summary Judgment (DE 99) is **DENIED.**

3)   The Court will separately issue judgment for Defendant.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 9th day of December, 2013.

_____
KENNETH A. MARRA
United States District Judge